Rosemary Halligan
Jessica Eyland
Stern Tannenbaum & Bell LLP
380 Lexington Avenue
New York, New York 10168
212-792-8484

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
LIONEL OHAYON,                                                   :
                                                                 :   Index No. 21-cv-3689
                       Plaintiff,                          :
                                                                 :   **COMPLAINT**
                  -against-                               :
                                                                 :
SUMMIT MOUNTAIN HOLDING GROUP, L.L.C.,                           :
SUMMIT EDEN RESORT LLC, and SUMMIT EDEN                          :
COMMUNITY LLC,                                                   :
                                                                 :
                      Defendants.                         :
------------------------------------------------------------------ x

       Plaintiff Lionel Ohayon ("Plaintiff" or "Ohayon"), by his attorneys, Stern Tannenbaum & Bell LLP, for his Complaint against defendants Summit Mountain Holding Group, L.L.C. ("Summit Holding"), Summit Eden Resort LLC ("Summit Resort") and Summit Eden Community LLC ("Summit Community," with Summit Holding and Summit Resort collectively "Defendants" or "SMH"), alleges as follows:

## PARTIES

       1.      Ohayon is an individual who at all times relevant to the allegations of this Complaint was a resident of New York, with a place of business located at 1140 Broadway, New York, New York 10001.

       2.      Upon information and belief, Summit Holding is a limited liability company organized under the laws of the State of Utah, with a place of business at 3923 N. Wolf Creek Dr., Eden, Utah 84310.

3.  Upon information and belief, Summit Resort is a limited liability company organized under the laws of the State of Delaware, with the same place of business as Summit Holding, that is 3923 N. Wolf Creek Dr., Eden, Utah 84310, and is a subsidiary of Summit Holding.

4.  Upon information and belief, Summit Community is a limited liability company organized under the laws of the State of Delaware, with the same place of business as Summit Holding, that is 3923 N. Wolf Creek Dr., Eden, Utah 84310, and is a subsidiary of Summit Holding.

5.  Upon further information and belief, Defendants have the same ultimate owners as well as overlapping membership and management, and are used interchangeably for the business purpose described herein, that is, the ownership and proposed development titled the "Power Mountain Project." As set forth herein, Ohayon made a $500,000 investment respecting the proposed development that he has properly and repeatedly demanded Defendants repay to him. Defendants have wrongfully refused and failed to do so, thereby forcing this action.

## JURISDICTION AND VENUE

6.  This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(a) (1) because this action is between citizens of different states as Ohayon is a citizen of New York, and upon information and belief, defendant Summit Holding is a citizen of Utah, defendant Summit Resort is a citizen of Delaware and Utah, and defendant Summit Community is a citizen of Delaware and Utah. The matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

7.   Venue with respect to this action lies in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## BACKGROUND

8.   This action is based upon Ohayon's investment, termed a "Commitment" (the "Commitment") in the amount of $500,000 as a "Founding Member" in the "Powder Mountain Project" (the "Project")." The Commitment was refundable under certain conditions that have been met here.

9.   Specifically, as represented by Defendants, Summit Holding, and its subsidiaries, defendants Summit Resort and Summit Community, purchased approximately 9200 acres in Weber and Cache Counties, Utah, including the operations and assets of the Powder Mountain Resort, for the development of the Project.

10.  The Project was anticipated to include 500 single-family homesites ("Homesites"), mixed-use villages, including a "Main Street," and associated amenities for a private community centered around skiing and other outdoor activities in Utah.

11.  Defendants also represented to Plaintiff, and others similarly situated, that they intended to design a program for approximately 40-50 individuals (collectively, "Founding Members") that would feature a variety of benefits including, but not limited to, priority lot selection, exclusive skiing/snowboarding privileges, lifetime ski passes, expanded guest policies, interim and guest lodging benefits, waived one-time initiation fee, and special events.

12.  Unfortunately, despite that Ohayon paid the Commitment in 2013, the Project never materialized in any meaningful way, and despite proper demand, Defendants have failed

and refused to repay the Commitment to Ohayon even though there is no material issue of fact that the Commitment is currently due and owing Ohayon.

### A. SMH Solicits Ohayon To Become A Founding Member

13. Ohayon runs a successful design company in New York City focusing on the hospitality industry.

14. Defendants focused their marketing efforts, which consisted at least in part of sponsoring events, to sign on "Founding Members" from three principal markets, New York, where Plaintiff resides, Los Angeles, and San Francisco.

15. And in fact, Plaintiff entered into the relevant agreements (discussed below) from his place of business located in New York City.

16. Upon information and belief, approximately 25% of the "Founding Members" are residents of New York, and of those, like Plaintiff, the majority are residents of Manhattan.

17. Ohayon also was engaged by SMH to work on certain aspects of the Development, which services he performed from his New York City design studio.

### B. Ohayon Executes the Founding Members Agreement with SMH

18. After being solicited by Defendants to become a Founding Member, Ohayon entered into an "Agreement for Founding Members Interests" with Summit Holding, dated as of July 3, 2013 (the "Founding Members Agreement").

19. Under the Founding Members Agreement, Summit Holdings bound its subsidiaries, defendants Summit Resort and Summit Community, to the obligations to Ohayon set forth therein.

20. Pursuant to the Founding Members Agreement, Ohayon agreed to make the Commitment, in the amount of $500,000 with respect to the Project, subject to his execution and acceptance of a "Subscription Agreement" (the "Subscription Agreement").

21. As contemplated by the Founding Members Agreement, Ohayon executed the Subscription Agreement, dated as of April 23, 2013, pursuant to which, <u>inter alia</u>, he became a Founding Member and pursuant to which he funded the full amount of the Commitment.

22. Summit Holding also executed an unsecured promissory note in the amount of $425,000 in favor of Ohayon (the "Note").

23. Pursuant to his rights under the Founding Members Agreement, SMH and Ohayon "acknowledged and agreed" that Ohayon "shall have the opportunity to purchase Lot 90 in the Village." (Founding Members Agreement, "Selection of Homesite" (the "Selected Homesite").)

24. Ohayon intended to "construct a ground-level creative studio beneath the residence to be constructed by [Ohayon]" and "the Selected Homesite shall be entitled to permit [Ohayon's] development and construction above the Main Street amenity space of either (i) two adjacent residences or (ii) a condominium consisting of two units (the "Residential Units")." (Founding Members Agreement, "Construction of Studio and Residence.")

25. Under the Founding Members Agreement, Ohayon agreed to convert the Note to a "Homesite Credit" in the amount of the Commitment and executed a "Founder Purchase Agreement" for the purchase of the Selected Homesite.

26. Most significantly here, however, in relevant part, under the Founding Members Agreement:

> **… in the event that prior to [Ohayon's] commencement of construction of a residence on the Selected Homesite, either** (i) SMH elects not to pursue the

contemplated development of "Main Street" in the Village as currently contemplated **or (ii) construction of at least 50% of the contemplated development of 'Main Street' in the Village has not been commenced, with all necessary infrastructure complete by June 2015, then SMH shall notify [Ohayon] of such circumstance in writing and [Ohayon] may, subject to reasonable and customary terms and conditions, convey the Selected Homesite back to SMH for an amount equal to the Commitment,** and at [Ohayon's] option, [he] may purchase another Homesite in the Village which then remains available for selection at a price equal to the Commitment.

(Founding Members Agreement, "Selection of Homesite" (emphasis added).)

27. In violation of their obligation to do so, Defendants never notified Plaintiff that by June 2015 construction of at least 50% of the contemplated development of "Main Street" in the Village had not commenced, and not all necessary infrastructure had been completed.

28. It is undisputed, however, that, by June 2015 construction of at least 50% of the contemplated development of "Main Street" in the Village had not commenced, and not all necessary infrastructure had been completed. Therefore, pursuant to the plain terms of the Founders Members Agreement, Ohayon elected to convey his interests in the Selected Homesite back to SMH for an amount equal to $500,000, that is, the amount of the Commitment.

29. By notice dated June 11, 2019, consistent his rights, Ohayon made a written demand for the return of the Commitment.

30. While Ohayon acted in good faith and attempted to come to another resolution with SMH, the parties were unable to reach a satisfactory resolution, and Ohayon made second and third written demands for the return of the Commitment on March 4, 2020 and March 19, 2021, respectively.

31. In his last notice of March 19, 2021, Ohayon made clear that if payment were not made by April 2, 2021, he would have no choice but to pursue litigation.

32. SMH have wrongfully failed and refused to return the Commitment to Ohayon and therefore are in default under and in breach of the Founding Members Agreement.

33. SMH therefore is liable to Ohayon for $500,000 in damages, as well as his reasonable attorneys' fees, plus statutory interest for breach of contract.

## FIRST CLAIM FOR RELIEF
(Breach of Contract Against Summit Holding)

34. Ohayon hereby repeats and realleges the allegations contained in paragraphs 1 through 33 above as though fully set forth herein.

35. Whether the law of Delaware, New York, or Utah applies to the agreement Defendant is in breach of the Founding Members Agreement.

36. The Founding Members Agreement constitutes a valid and binding contract between Ohayon and Summit Holding.

37. Summit Holding has breached the Founding Members Agreement by failing and refusing to pay Ohayon the Commitment in the amount of $500,000, exclusive of statutory interest due from the date of the breach.

38. Ohayon has fully performed its obligations pursuant to the Founding Members Agreement.

39. As a direct result of Summit Holding's breach of the Founding Members Agreement, Ohayon has suffered damages in an amount to be determined at trial, but in no event less than $500,000, plus statutory interest due from the date of the breach, costs, disbursements and attorneys' fees incurred by Ohayon in this action.

## SECOND CLAIM FOR RELIEF
(Breach of Contract Against SMH)

40. Ohayon hereby repeats and realleges the allegations contained in paragraphs 1 through 39 above as though fully set forth herein.

41. The Founding Members Agreement constitutes a valid and binding contract.

42. Under the Founding Members Agreement, Summit Holdings bound its subsidiaries, defendants Summit Resort and Summit Community, to the obligations to Ohayon set forth therein.

43. Ohayon has fully performed its obligations pursuant to the Founding Members Agreement.

44. Upon information and belief, at all relevant times hereto, Defendants were the alter egos of each other, and there exists, and at all times herein mentioned has existed, a unity of interest and ultimate ownership between Defendants such that any separateness between them has ceased to exist.

45. SMH have breached the Founding Members Agreement by failing and refusing to pay Ohayon the Commitment in the amount of $500,000, exclusive of statutory interest due from the date of the breach.

46. Accordingly, Plaintiff respectfully requests that the Court hold Defendants jointly and severally liable for the breach of the Founding Members Agreement, and award Plaintiffs damages in an amount to be determined at trial from Defendants, but in no event less than $500,000, plus statutory interest due from the date of the breach, costs, disbursements and attorneys' fees incurred by Plaintiff in this action.

## **PRAYER FOR RELIEF**

WHEREFORE, based on the foregoing, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendants as follows:

(a) on its first Claim for Relief for breach of the Founding Members Agreement against Summit Holding in an amount to be determined at trial, but in no event less than $500,000, plus statutory interest due from the date of the breach, costs, disbursements and attorneys' fees incurred by Plaintiff in this action;

(b) on its second Claim for Relief for breach of the Founding Members Agreement against Defendants SMH jointly and severally in an amount to be determined at trial, but in no event less than $500,000, plus statutory interest due from the date of the breach, costs, disbursements and attorneys' fees incurred by Plaintiff in this action; and

(c) for such other and further relief as to this Court seems just and proper.

Dated: New York, New York
April 26, 2021

                              STERN TANNENBAUM & BELL LLP

                              By: *[signature]*
                                  Rosemary Halligan
                                  Jessica Eyland
                              380 Lexington Avenue
                              New York, New York 10168
                              (212) 792-8484
                              *Attorneys for Plaintiff*